

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-1199-17
---

### ANDREW LEE WILLIAMS, Appellant

### v.

### THE STATE OF TEXAS

---
### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### BRAZORIA COUNTY
---

**WALKER, J., filed a dissenting opinion.**

### DISSENTING OPINION

Today, this Court holds that a certificate of analysis that is missing information required by Article 38.41 may nevertheless be in substantial compliance. Moreover, the majority maintains that even if a certificate of analysis is missing mandatory information, the defendant is still required to exercise or forfeit his constitutional rights in accordance with Article 38.41's pre-trial timeline. This position is incompatible with the language and existence of § 3 of the statute. Accordingly, I respectfully dissent.

The specific question in this case is whether this certificate of analysis substantially complied

with Article 38.41. Because it omits several pieces of information required under § 3, it must fail to substantially comply. Section 3 of Article 38.41 states that a certificate of analysis "must contain" the following:

(1) the names of *the* analyst and the laboratory employing *the* analyst;

(2) a statement that the laboratory employing *the* analyst is accredited by a nationally recognized board or association that accredits crime laboratories;

(3) a description of *the* analyst's educational background, training, and experience;

(4) a statement that *the* analyst's duties of employment included the analysis of physical evidence for one or more law enforcement agencies;

(5) a description of the tests or procedures conducted by *the* analyst;

(6) a statement that the tests or procedures used were reliable and approved by the laboratory employing *the* analyst; and

(7) the results of the analysis.[1]

A plain, reasonable reading of the statute makes it clear that the information included in the affidavit is to be about a certain analyst. Every time the word *analyst* is used it is preceded by the word *the*. The statute never once says *an analyst*. Use of *the* analyst instead of *an* analyst means the statute is only concerned with a particular, specific analyst—not just any person capable of analyzing. Specifically, the use of *the* analyst appears to be exclusively regarding *the* testing analyst. The wording of subsection (5) is particularly probative as to the meaning of the statute. Subsection (5) requires that the certificate of analysis must contain a description of the tests or procedures conducted by *the* analyst. Obviously, *the* analyst in subsection (5) is *the* analyst who conducted the tests or procedures. So it would follow that, since every time the word analyst is used in § 3 it is

---

[1] TEX. CODE CRIM. PROC. Art. 38.41 (emphasis added).

preceded by the word *the*, the entirety of § 3 is referring to *the* analyst who performed the tests or procedures.

The subsections that unequivocally require the information to be from or about the testing analyst are (3)-(6). Starting with subsection (3): why would the legislature write that the certificate of analysis "must contain" the background, experience, and schooling of anyone other than the testing analyst? Why would anyone else matter? There is no question that if the information of some analyst from some other lab was included in the certificate, it would not substantially comply. It is inconsequential, for example, to the results that some extraneous analyst employed over at Bayer, went to a nice school, and has worked for eight years. A description of a random analyst's educational and work history is no less informative or relevant than that of a reviewing or supervising analyst that just so happens to be employed at the lab where the test was actually conducted. I cannot fathom a scenario where the Legislature would be adamant that an affidavit include whether and for how long someone went to school and worked in this field unless it is the person whose intelligence and experience actually come into play. Accordingly, the only person's background or ability that matters to the results is that of the testing analyst. It is untenable to hold that including anyone else's background or abilities could even come close to complying with this subsection.

Now, for subsection (4), I cannot think of a single reason why a certificate of analysis would need to contain a statement that it is one of the analyst's duties to analyze physical evidence unless the analyst happened to analyze some of the physical evidence in that case. It is unclear why anybody would need to ensure that someone merely reviewing the results has an "analyzes physical evidence" bullet point in their job description. In theory, reviewing analysts just need to know how to read and

understand what the results mean. It truly makes no difference if, on occasion, they are tasked with analyzing physical evidence unrelated to the evidence contained in the certificate. The defendant is only interested in the fact that the one who did analyze the physical evidence was hired to do so—and that it was not the janitor or some other individual employed at the lab that decided to try their hand at forensic analysis that day. Again, it is inconsistent with the purpose of this statute to suggest that a certificate of analysis could be in compliance with this statute by including information from any person other than the testing analyst.

The purpose of this statute appears to be to provide a mechanism that would allow a defendant to effectively agree to allow an analyst's report to be automatically admitted in evidence if the defendant is notified of the State's intention to do so within a specified time limit, the notice contains all seven of the statute's requirements, and the defendant does not object to the admission of the report within a statutorily specified period of time. The underlying purpose seems to relieve laboratory analysts from the task of going to court when the defendant is satisfied as to what the analyst's direct-examination testimony would consist of and that there would be no practical reason for cross-examination. The only way these purposes can be met is to read the statute to require that subsections (3)–(6) must relate to the analyst that performed the lab tests, and again, reading the statute as a whole, I would hold that the statute does just that and is unambiguous in that respect.

Lastly, for subsections (5) and (6), nobody other than the testing analyst could provide a description of the tests used or the reliability thereof. If a reviewing or supervising analyst provides this information it would be purely general or completely speculative, which is not what "must [be] contained." This part of the statute is about the specific tests that were used by the analyst and whether they were, specific to the results contained in the certificate of analysis, actually reliable.

Including a description on the tests that *an* analyst generally conducts does not get us anywhere. Moreover, procedures that are generally reliable are not informative to the actual reliability of the proffered results. The purpose of this is not to make sure that the tests generally used are on par with the scientific community and that the lab is generally producing sound results. The purpose is to provide a descriptive account of how the tests were *actually done* by the analyst and a statement regarding whether the results were obtained reliably, through accepted laboratory standards. Stating that results are generally achieved by a reliable and approved method does not serve any purpose in this scenario.

The certificate of analysis filed in the present case is missing at least four of the seven requirements of § 3. The front page of the certificate of analysis states that Dr. Adams is familiar with the general procedures of the lab, that her duties include the analysis of toxicological evidence, and that her *curriculum vitae* is attached. She merely reviewed the results and was not present for any of the actual testing. Nowhere does it have any background, experience, or educational information about any of the analysts who were involved in the actual procedures. Nowhere does it list that it was the duty of any of the testing analysts to analyze physical evidence. Nowhere does it describe the tests that were actually performed. Nowhere does it state that what was actually performed was reliable or approved. All that was included was a general, boilerplate statement that the procedures and tests that were performed were reliable and approved by the lab. The most that can be said of this certificate of analysis is that it spelled out the results and stated that the lab was accredited. It did additionally include the testing analyst's name, but you had to search deep in the results for it, and it did not state that she was even employed at the lab.

The certificate of analysis that was filed in this case does not meet the minimum threshold

of substantial compliance. As the majority explains, a certificate of analysis "must, *at a bare minimum*, 'substantially' comply—that is, comply with *all* of the substantive requirements of —Article 38.41. As we have already observed, the mandatory, substantive requirements of an Article 38.41 certificate are laid out in Section 3."[2] Thus if, a certificate of analysis is missing any of the seven requirements it cannot be said to substantially comply. The majority even concedes that omitting information that must be contained under § 3 is the one way to guarantee that the certificate of analysis will fail to substantially comply.[3]

A certificate of analysis, such as this one, that does not substantially comply with the statute cannot trigger a timer for a defendant to forfeit his constitutional rights. This is true even if it is timely filed. Nevertheless, the majority essentially holds that because *something* was timely filed that mostly resembled a compliant certificate of analysis, the defendant was on notice to object or forfeit his rights before trial. The majority's position would essentially permit any person—who maybe just so happened to glance at the forensic results—to scribble their personal details on any piece of paper, get it notarized, and staple it to some forensic results and thereafter require the defendant to make a decision whether he wants to forfeit his constitutional rights. Why even require anything in § 3 at all if a defendant is still going to be required to make a pre-trial demand for the analyst's live testimony simply because something partially on par with the mandatory requirements of § 3 was filed alongside forensic results? Why not just write a statute where only the results need to be filed? It is inconceivable to hold a defendant accountable to an invalid affidavit, regardless of the fact that it was filed on time. That flies in the face of the entire existence of § 3.

---

[2] Majority Op. at 13.

[3] *Id*. at 15.

The certificate of analysis is required to include at least seven pieces of information. In this case, it—at best— included three. There is no way this certificate of analysis can comply with Article 38.41 if it includes less than half of the information required. A certificate of analysis that fails to substantially comply cannot trigger the statute's timer and require the defendant to exercise or forfeit his constitutional rights before trial. That completely ignores the presence and purpose of § 3 in the statute. Therefore, in my opinion, Williams was under no obligation to waive his objection before trial. His objection at trial was valid and should not have been overruled. Respectfully, I dissent.

Filed: October 9, 2019
Publish